IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HARVEY DANIELS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CASE NO. 1:20-cv-939-RAH |
| ) | [WO] |
| FARM SERVICE AGENCY, ) | |
| *et al.*, ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OPINION AND ORDER**

Harvey Daniels appeals from the final determination by the United States Department of Agriculture's (USDA) National Appeals Division concerning a crop disaster payment he received in 2016 from the Noninsured Crop Disaster Assistance Program (NAP). Both Harvey and the Agency[1] have moved for summary judgment. For the reasons below, Harvey's motion is due to be denied, the Agency's motion is due to be granted, and the final agency decision is due to be affirmed.

**I.   BACKGROUND**

**A.   Overview of NAP**

NAP provides financial assistance to farmers of non-insurable crops to protect against natural disasters that prevent crop planting or result in lower yields or crop

---

[1] Harvey has named as defendants the Farm Service Agency and the United States Department of Agriculture. For purposes of this Opinion, the Court will refer to them collectively as the Agency.

losses. NAP is administered under the general supervision of the Farm Service Agency (FSA) and is carried out by FSA state and county committees. 7 C.F.R. § 1437.2(a).

Under NAP, program participants are required to notify the FSA within 72 hours after a crop loss occurs or first becomes apparent to the participant, the purpose of which is to allow the FSA an opportunity to quickly inspect the deteriorating crop in the field and to make an appraisal. *Id.* § 1437.11(a); (Doc. 28-1 at 136–137.) The participant must certify this date in his Notice of Loss along with other details regarding the crop loss. 7 C.F.R. § 1437.11(c)(2). The local FSA committee reviews this Notice of Loss and any supporting documentation to determine whether the participant qualifies for NAP benefits. *See generally id.* § 1437.11.

FSA regulations employ a Finality Rule. Under the Finality Rule, a determination by an FSA state or county committee becomes final and binding 90 days after a participant files an application for benefits with supporting documentation. 7 C.F.R. § 718.306(a). If the FSA state or county committee erroneously approves a claim for benefits, the Finality Rule bars the Agency from recovering that payment after 90 days unless an exception to the Finality Rule applies, such as if the "determination was in any way based on erroneous, innocent, or purposeful misrepresentation; false statement; fraud; or willful misconduct by or on behalf of the participant." *Id.* § 718.306(a)(2), (b)(1).

### B.   Harvey's 2016 NAP Claim

Harvey is a fourth-generation farmer. In February 2016, Harvey purchased NAP coverage for a hybrid tomato crop. (Doc. 26-6 at 18–20.) Harvey ultimately planted 20.4 acres of tomatoes in late April 2016 with an estimated production yield of 26,785 boxes of tomatoes if successful. (Doc. 26-6 at 7; Doc. 26-7 at 1.)

Harvey began to worry about his tomato crop, and on June 23, 2016, he contacted the Houston County FSA office to report his concerns. (Doc. 28-1 at 199.) Shortly before July 8, 2016, Harvey took a broker to inspect his tomato fields, and the broker determined there was nothing he would purchase due to the poor quality of the tomatoes. (*See* Doc. 28-1 at 223–24.) When Harvey began to harvest his tomato crop around July 8, 2016, he harvested only 15 boxes of marketable tomatoes, an amount that was less than 1% of his estimated yield. (Doc. 28-1 at 440–41.) Harvey delivered the remaining unmarketable tomatoes (several trailer loads) to a local hog farmer. (Doc. 26-7 at 1, 10; Doc. 26-15 at 21; Doc. 28-1 at 308–09.)

On July 13, 2016, Harvey filed a Notice of Loss with the Houston County FSA office certifying that drought, heat, and excessive moisture had caused losses

to his tomato crop and that the loss first became apparent that same day.[2] (Doc. 26-6 at 23–24.) The Houston County FSA Committee approved his claim based in part on the information Harvey provided in his Notice of Loss, and payment was issued to Harvey on his failed crop. (Doc. 26-7 at 11.)

### C. FSA Reversal

The Agency, through the FSA, observed a significant increase in NAP enrollment and subsequent claim payments in Houston County for the 2016 year and therefore it conducted a review of the local committee's claim approvals. Harvey's 2016 claim was reviewed as part of that process.

In October 2019, the FSA, through its deputy administrator, informed Harvey that he had reviewed his Notice of Loss and supporting documentation and had decided to reverse the county committee's approval of Harvey's claim. (Doc. 26-2 at 5–8.) The deputy administrator cited a host of reasons for the reversal, including that Harvey had misrepresented the cause of his crop loss (drought, heat, and excessive moisture), had misrepresented the date that his loss first became apparent[3], had misrepresented that he had commercially harvested 20.4 acres, and that Harvey

---

[2] Harvey also filed a Notice of Loss on behalf of his wife, Brittany Daniels, for a tomato crop that she claimed to have attempted to grow but failed. A petition for judicial review regarding that claim is also pending before this Court. *See Brittany Daniels v. Farm Service Agency, et al.*, Case No. 1:22-cv-0035-RAH (M.D. Ala.) (Huffaker, J., presiding).

[3] This date will also be referred to as "the loss date."

did not follow good farming practices and did not timely notify the FSA that he had completed his harvest. (*Id.* at 5–7.) The deputy administrator also concluded that Harvey had participated in a scheme to obtain NAP payments on a crop that he never intended to produce and harvest and that he was not an eligible producer because he had created fictitious receipts and did not incur any expense in growing the crop. (*Id.* at 7.) As a result, the deputy administrator determined that Harvey owed the Agency a refund of his 2016 NAP payment and was ineligible to participate in NAP for the 2016, 2017, and 2018 years. (*Id.* at 7–8.)

### D. NAD Administrative Judge's Decision

Harvey appealed the deputy administrator's decision to the National Appeals Division (NAD), an independent office within the USDA that conducts administrative appeals hearings of adverse program decisions.[4] Harvey contested the FSA's October 2019 decision as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. (Doc. 26-2 at 11–13.)

An administrative judge was appointed and conducted an evidentiary hearing. In his decision, the administrative judge concluded that Harvey had provided credible, reliable testimony and had met his burden of proving that the FSA's

---

[4] The NAD is responsible for adjudicating specified administrative appeals from adverse decisions by certain agencies within the USDA, including the Commodity Credit Corporation, the Farm Service Agency, and the FSA state, county, and area committees, including appeals from the "[d]enial of participation in, or receipt of benefits under, any program of an agency[.]" *See* 7 U.S.C. §§ 6991–7002; 7 C.F.R. §§ 11.1, 11.3.

adverse decision, in part, was erroneous. (Doc. 26-3 at 26, 29, 32.) Therefore, the administrative judge reversed the FSA on all issues except the finding that Harvey had failed to follow good farming practices and that his tomato crop did not suffer an eligible weather event in 2016. (*See id.* at 29–32.) The administrative judge also chastised the FSA for twisting a mere difference of opinion into an affirmative misrepresentation, especially when Harvey's opinion had foundation in fact and was in good faith. (*Id.* at 26.) As a result, the administrative judge concluded that although Harvey did not suffer an eligible loss under NAP that entitled him to payment in 2016, the Finality Rule nevertheless applied and prevented the FSA from recouping Harvey's 2016 NAP payment. (Doc. 26-3 at 34.)

### E. NAD Director Review

The Agency appealed the administrative judge's decision to the NAD Director. (Doc. 26-4 at 2–7.) In its appeal, the Agency argued the administrative judge erred in applying the Finality Rule and that his findings about the loss date were not supported by substantial evidence because, according to the Agency, Harvey did in fact misrepresent the date on which his loss first became apparent. (*See id.* at 3–4.) Harvey argued the administrative judge's decision was definitive and explicit, and that the Agency was merely seeking a "second bite at the apple." (Doc. 26-4 at 11–12.)

On director review, the Deputy Director reversed the administrative judge's

determination as it concerned the Finality Rule, finding that it was not supported by substantial evidence. (Doc. 26-4 at 39, 41.) According to the Deputy Director, there was no evidence that Harvey had completed his harvest on July 13, 2016, as he had certified in his Notice of Loss, because there was no evidence that he harvested any tomatoes after July 8, 2016. (*Id.* at 39.) The Deputy Director further reasoned that even if Harvey did not realize the full extent of his crop loss until July 13, 2016, the evidence nevertheless showed his crop loss was first apparent to him before July 13, 2016.[5] (*Id.* at 39–40.) Therefore, she concluded the Finality Rule did not apply and the Agency could demand that Harvey refund his 2016 NAP payment. (*Id.*) This decision constituted the Agency's final decision under 7 U.S.C. § 6999.

## II.   STANDARD OF REVIEW

Summary judgment "is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency." *Mahon v. U.S. Dep't of Agric.,* 485 F.3d 1247, 1253 (11th Cir. 2007). "However, 'even in the context of summary judgment, an agency action is entitled to great deference.'" *Id.* (citation omitted).

---

[5] The Agency did not dispute on director review the administrative judge's finding that Harvey did not engage in a scheme or device with respect to whether he was an eligible producer. (Doc. 26-4 at 38 n.5.) Additionally, the Deputy Director did not address whether Harvey misrepresented that his tomato crop suffered from drought. (*Id.* at 38 n.6.)

7

Judicial review of a final agency determination is governed by the Administrative Procedure Act, which provides in part that a court may set aside an agency's "action, finding or conclusion" for being "arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence." *Id.* (citing 5 U.S.C. § 706(2)); *see also* 7 U.S.C. § 6999; *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1167 (10th Cir. 2003).

"To determine whether an agency decision was arbitrary and capricious, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990) (citation omitted). The arbitrary and capricious standard is exceedingly deferential, *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996), and "[t]he reviewing court is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the" decision, *Skinner*, 903 F.2d at 1539. "Rather, the 'task of the reviewing court is to apply the appropriate . . . standard of review . . . to the agency decision based on the record the agency presents to the reviewing court.'" *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corp of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) (alterations in original) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)).

### III.   DISCUSSION

The parties have filed opposing summary judgment motions disputing whether the Deputy Director erred.  Harvey argues the Deputy Director could not reverse the administrative judge's credibility findings regarding Harvey or the finding that Harvey did not make any misrepresentations.  Harvey also argues that he was entitled to equitable relief from the Deputy Director.

The Agency argues that the only reviewable issues are whether Harvey misrepresented the loss date, whether that misrepresentation provided an exception to the Finality Rule, and whether Harvey timely notified the Agency that he had completed his harvest, as those were the only issues presented on director review. The Agency further contends the Deputy Director's conclusions as to each of these issues was supported by substantial evidence, and thus his decision to reverse the administrative judge was not erroneous.  Finally, the Agency argues that Harvey is not entitled to equitable relief because he did not raise (or properly exhaust) this issue below with the Deputy Director.

Whether Harvey did or did not make a misrepresentation about the loss date is the gateway issue as to whether the Finality Rule applies.  The Finality Rule bars the Agency from recouping Harvey's 2016 NAP payment unless an exception to the rule applies, such as whether the FSA county committee's approval of Harvey's claim "was in any way based on erroneous, *innocent, or purposeful*

9

*misrepresentation*; false statement; fraud; or willful misconduct by or on behalf of the participant." 7 C.F.R. § 718.306(a)(2) (emphasis added).  In other words, if Harvey received a NAP payment on an otherwise ineligible loss, but Harvey made no misrepresentations regarding his crop loss and his claim, then the Finality Rule applies and bars the Agency from seeking repayment from Harvey three years later. But if Harvey did make a misrepresentation, even an innocent one, the Finality Rule would not apply, and the Agency can obtain a refund of his 2016 NAP payment. Since the Deputy Director concluded that Harvey misrepresented the date his loss was first apparent, the primary focus of this appeal is whether the Deputy Director's decision on this issue was "arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence." *Mahon*, 485 F.3d at 1253 (citing 5 U.S.C. § 706(2)).

### A.   The Loss Date Issue

As to the loss date issue, Harvey certified in his Notice of Loss that July 13, 2016 was the date his loss first became apparent.  The FSA deputy administrator found that this was a misrepresentation because Harvey had completed his harvest by July 8, 2016, and thus at that time Harvey would have been aware of his loss since his crop yield was substantially lower than it should have been.  On appeal, the administrative judge concluded that it was not a misrepresentation; instead, it was

just a difference in opinion. On director review, the Deputy Director concluded that "it is evident from the record that even if [Harvey] did not realize the full extent of his crop loss until July 13, 2016, the loss was first apparent prior to this date." (Doc. 26-4 at 39–40.) Therefore, according to the Deputy Director, the administrative judge erred when he held "[s]ince the *true extent and nature* of [Harvey's] loss was not apparent the first day of harvest, [Harvey] did not misrepresent that the loss became apparent on July 13, 2016, and the Agency erred in concluding such." (*See* Doc. 26-3 at 27 (emphasis added).)

On director review, the Deputy Director was required to determine whether the administrative judge's decision supported by substantial evidence. 7 C.F.R. § 11.9(d)(1). The substantial evidence standard is not a high threshold to satisfy: "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Since the substantial evidence standard is "highly deferential" to the administrative judge's factual findings, the Deputy Director "must affirm the [administrative judge's] decision unless there is no reasonable basis for that decision"—that is, the Deputy Director must conclude the administrative judge's decision was unreasonable based on the record. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc).

In her determination, the Deputy Director focused on several issues with the

decision of the administrative judge. First, she noted that the administrative judge focused on the wrong inquiry. Instead of looking to the date that the true extent and nature of Harvey's loss was known, the administrative judge should have looked to when the loss first became apparent. As the NAP regulations provide, NAP program participants must "notify FSA of the damage or loss . . . within 72 hours of the date damage or loss on the unit *first becomes apparent*," 7 C.F.R. § 1437.11(a) (emphasis added), and must certify in the Notice of Loss the "[d]ate the disaster occurred and when the damage or loss *first became apparent*," *id.* § 1437.11(c)(2) (emphasis added). (Doc. 26-4 at 39.) That is, the NAP regulations do not ask for when the true extent and nature of the loss becomes known.

The Deputy Director then provided multiple reasons for why the administrative judge's decision was not supported by substantial evidence. First, according to the Deputy Director, there was no evidence in the record to support the finding that Harvey completed his harvest on July 13, 2016. Instead, the evidence showed that Harvey harvested no tomatoes after July 8, 2016. Second, while Harvey claimed his loss was first apparent on July 13, 2016, the Director relied on Harvey's own testimony, which the administrative judge found credible, regarding (1) Harvey's June 23, 2016 phone call to the local FSA office during which Harvey expressed concern about his crop; (2) a broker's inspection of Harvey's tomato fields around July 8, 2016 from which the broker determined that the tomato crop was

unmarketable; and (3) Harvey's completion of his harvest on July 8, 2016 during which he was only able to pick less than 1% of his expected crop production. (Doc. 26-4 at 39.) The Deputy Director also pointed to Harvey's own expert witness who testified at the evidentiary hearing that a farmer would typically see evidence of splitting before harvest even if the full extent of the crop damage might not be apparent at that time. (*Id.* at 36.) Thus, the Deputy Director concluded that while Harvey may not have realized the full extent and nature of his crop loss until a few days later, given the record, Harvey's crop loss was first apparent prior to July 13, 2016.

Although the administrative judge found Harvey's testimony credible that the *true extent* and nature of his crop loss was not apparent to him until July 13, 2016, the proper inquiry was *when* did the loss *first became apparent*. On that issue, the Deputy Director did not act arbitrarily or capriciously in rejecting the administrative judge's analysis because there was no substantial evidence that Harvey's crop loss was *first apparent* on July 13, 2016. Instead, the relevant NAP regulatory provisions and the entirety of the record, including Harvey's own testimony, established largely without dispute that the date the loss first became apparent was before July 13, 2016, not on July 13, 2016. *See* 7 C.F.R. § 1437.11(a), (c)(2). Therefore, the Deputy Director did not err in concluding that Harvey misrepresented, even innocently, the date his crop loss was first apparent in his Notice of Loss. And having concluded

that the Deputy Director did not err in reversing the administrative judge on the loss date issue, the Deputy Director also did not err in concluding that the Finality Rule did not apply, as the misrepresentation exception applied to Harvey's claim. *See* 7 C.F.R. § 718.306(a)(2).[6]

The Court sympathizes with Harvey on what appears to be a hyper-technical issue as it concerns the date his loss first became apparent—an issue that appears to turn on a matter of days. But this Court does not sit as a factfinder who must resolve disputed issues of fact. *See Adefemi*, 386 F.3d at 1027 ("[Courts] cannot find, or consider, facts not raised in the administrative forum, nor can [courts] 'reweigh the evidence from scratch.'" (cleaned up) (citations omitted)). Accordingly, as it concerns the Deputy Director's decision regarding the Finality Rule and her reversal of the administrative judge, the decision is due to be affirmed.

## B.   Equitable Relief

Harvey also argues the Deputy Director erred in failing to grant him equitable relief, a discretionary power afforded the Deputy Director by statute. The Agency

---

[6] Harvey also argues the Court should reinstate the administrative judge's decision on the grounds that the Deputy Director did not discuss the other determinations made by the administrative judge, including Harvey's general credibility and whether Harvey made misrepresentations regarding the cause of his crop loss, the date his harvest was complete, the amount of tomatoes harvested, his status as an eligible producer, and whether Harvey forged fertilizer receipts. Notwithstanding the fact that Harvey failed to raise any arguments with respect to these issues on director review (*see* Doc. 26-4 at 20–21), the Court pretermits discussion of them because the issue of when Harvey's crop loss was first apparent is dispositive of the outcome of this administrative appeal.

argues the Deputy Director did not err because Harvey never sought equitable relief from the Deputy Director, and even if he did, the Deputy Director was certainly well within his discretion to deny it.

Harvey is correct that the Deputy Director has discretionary authority to grant equitable relief when, in acting in good faith, Harvey relied upon the actions or advice of the Agency or when he made a good faith effort to comply with NAP rules. 7 U.S.C. § 7996(b); *see also* 7 C.F.R. § 718.303. But the record is clear that Harvey never requested equitable relief from the Deputy Director in any form on any occasion, whether that be in his response to the Agency's appeal for director review, (*see* Doc. 26-4 at 11–12), or in a separate request once the Deputy Director issued his decision reversing the administrative judge's determination.[7] Because Harvey never argued before the Deputy Director why he should be given equitable relief, the record was never developed on this matter. Since Harvey failed to explicitly raise the issue of equitable relief with the only person who could give it, the Court thus concludes that Harvey failed to properly preserve and exhaust his argument for why he is entitled to equitable relief under 7 U.S.C. § 7996(b). *See Mahon*, 485 F.3d at 1254–55 ("Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to raise in [a] timely fashion before an

---

[7] Harvey did mention equitable relief in the hearing with the administrative judge, and the Agency set forth its position as to why equitable relief was not appropriate. (Doc. 26-17 at 29–30.) But Harvey still had an obligation to seek out relief with the Deputy Director, which he did not do.

15

administrative agency." (citations omitted)); *Ballanger v. Johanns*, 495 F.3d 866, 868–71 (8th Cir. 2007) (holding that claimants must present all issues with the NAD before raising them on judicial review); *Fleming v. U.S. Dep't of Agric.*, 987 F.3d 1093, 1100 (D.C. Cir. 2021) ("Put differently, '[i]f a party flouts [agency] regulation[s] by failing to raise with the [agency] an issue that the party asserts in court, the court generally has no basis for " 'setting aside' " the [agency's] order (even assuming the administrative law judge erred).'" (alterations in original) (citation omitted)).

## IV.   CONCLUSION

For the preceding reasons, it is **ORDERED** as follows:

1. Petitioner Harvey Daniels's *Motion for Summary Judgment* (Doc. 33) is **DENIED**;

2. Respondents' *Motion for Summary Judgment* (Doc. 37) is **GRANTED**;

3. The appeal determination of the Deputy Director of the National Appeals Division is **AFFIRMED** for the reasons stated herein; and

4. The Clerk of Court is directed to enter judgment in favor of Respondents, the Farm Service Agency and the United States Department of Agriculture, and close this file.

**DONE**, on this the 24th day of February 2023.

                        R. AUSTIN HUFFAKER, JR.
                        UNITED STATES DISTRICT JUDGE